UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AUG. BOLTEN WM. MILLER'S
NACHFOLGER (GMBH & CO.) KG,
ET AL

VERSUS

COOPER/T. SMITH STEVEDORING
COMPANY, INC., ET AL

CIVIL ACTION

NO. 08-566-HGB-KWR

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the court on a motion by defendants, Cooper/T. Smith

Stevedoring Co., Inc., and CGB Enterprises, Inc., for summary judgment (doc. 16).

Plaintiffs, Aug. Bolten Wm. Miller's Nachfolger KG; and Natalie Shipping & Trading

Corp. oppose the motion (doc. 17) and plaintiffs have replied to the opposition (doc.

20).  There is no need for oral argument and the matter is submitted.

**BACKGROUND**

Plaintiffs, the owners or managers of the M/V NATALIE BOLTEN, filed this

action on September 10, 2008, seeking damages allegedly sustained on April 22,

2008, when the M/V NATALIE BOLTEN unsuccessfully attempted to moor at an

anchorage operated by defendants on the Mississippi River at Mile Marker 180.

According to the complaint, defendants failed to provide a safe berth and failed to

warn plaintiffs of accumulated debris, which subsequently fouled the vessel's

anchors, necessitating assistance by tugs, pilotage and other miscellaneous

services. Plaintiffs seek $85,000 in damages together with related expenses, attorney's fees, interest, and costs. (Complaint, ¶¶ 2-8).

Defendants argue that they are "shielded from any liability to the plaintiffs under the Doctrine of Act of God" because "the high water condition of the river at the time of the incident was not a common occurrence" (doc. 16-3, pp. 6-7). Defendants also argue that the berth was not unsafe (*id.* at 4-6), and that, under the holdings of *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed.290 (1927), and *Guste v. M/V TESTBANK*, 752 F.2d 1019, 1020 (5th Cir. 1985 (*en banc*), plaintiffs are not entitled to damages because they suffered no physical damage to any property in which they had a proprietary interest.

In support of the motion for summary judgment and pursuant to Uniform Local Rule 56.1, plaintiffs have submitted a statement of undisputed facts that they claim are material to the motion before the court (doc. 16.2).[1] Plaintiffs' statement of undisputed facts provides as follows, and the material responses of plaintiffs are noted in footnotes where appropriate.[2]

---

[1]Local Rule 56.1 provides that "[e]very motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."

[2]Local Rule 56.2 provides that "[e]ach copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to bd served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."

1. Cooper is the owner/operator of multiple derrick barges that operate out of Cooper's facility in Darrow, Louisiana, and at all relevant times engages in maritime commerce within the Mississippi River.

2. Cooper maintains multiple leases with the state of Louisiana along the Mississippi River where they have constructed berths for the mooring of vessels.

3. Before mooring at Cooper's berth, a vessel is boarded and piloted by a member of the Baton Rouge Steamship Association in order to ensure that the vessel is safely moored.

4. Once the vessel is successfully moored, Cooper's derrick barges pull along side the vessel in order to load or unload cargo.

5. On the day of the incident, April 22, 2008, the level of the Mississippi River was uncharacteristically high.

6. The conditions were so extreme that "high water" restrictions were in effect.

7. On April 22, 2008, M/V NATALIE BOLTEN was scheduled to moor at Cooper's Mile Marker 180 berth in order to load cargo.

8. Due to the high river conditions, the vessel fouled its anchors during the mooring process and could not moor at Mile Marker 180.[3]

9. Cooper freed the vessels anchors, without charge, and the vessel was moored at a different berth at Mile Marker 179.

10. As a result of the shifting from Mile Marker 179, the plaintiffs incurred additional charges.

---

[3]This statement is contested insofar as it may be read to provide that high water was the sole cause of the fouling.  In their statement of contested facts, plaintiffs contest "[t]he cause of NATALIE BOLTEN's damages" (doc. 17-5, ¶ 3). They also argue extensively that revetment caused the anchors to foul and fail to hold (doc. 17, pp. 3-10).

11.     The plaintiffs have disputed these charges and has [sic] filed this suit claiming that Cooper's Mile Marker 180 berth was unsafe.[4]

12.     The plaintiffs have not claimed, nor do they have any physical damage to any property in which it [sic] has a proprietary interest.[5]

13.     Torsten Kluever, the operations manager for one of the plaintiffs stated that, outside of some normal wear and ter of the vessel's anchors, the vessel was not damaged as a result of the April 22, 2008 incident.[6]

14.     The only loss sustained by plaintiffs was economic.[7]

15.     It has been well documented that the conditions of the Mississippi River during April, 2008, and the months following were "high water."[8]

─────────────

[4]Though this statement is not contested, the court notes that plaintiffs also argue that they incurred charges in keeping the vessel on location and secure "until the morning when Cooper could get a team of welders to repair the anchors."  *See* (doc. 17, pp. 2-3, 6).

[5]Plaintiffs contest this statement (doc. 17-5, ¶ 4), and argue that the *M/V NATALIE BORDEN*'s anchors were damaged by debris and had to be repaired by defendants before the ship could successfully anchor (doc. 17, pp. 2, 6, 16-17).

[6]This is a comment on the evidence rather than a statement of undisputed fact and requires no contravention by plaintiffs.

[7]Plaintiffs contest this statement (doc. 17-5, ¶ 4) only insofar as it may be read to imply that no physical damage was sustained to a proprietary interest.  See *supra*, n. 4.

[8]Though this is a comment on the evidence instead of a statement of a material fact, to the extent defendants may have intended to state that "high water" conditions were present at the time of the incident, they did so *supra*, in ¶6. Moreover, defendants have not argued otherwise, and have in fact admitted that high water conditions existed.  *See* (doc. 17, p. 8).

4

16.     High water [occurs] when [] snow melt and rainfall cause an increase in the water level [in] the lower Mississippi River region.

17.     During a high water period, the speed of the river's current increases causing navigation to become more dangerous and regulations to be imposed on all mooring operations within the Mississippi River by the Board of New Orleans Baton Rouge Steamship Pilots Association.

18.     Captain Paul Hidalgo has moored countless vessels at Mile Marker 180 on numerous occasions.

19.     Those river conditions were open and obvious to all parties involved, including the vessel's operator.

20.     The plaintiffs were aware of the high water conditions.

21.     The high water condition of the river at the time of the incident was not a common occurrence.

22.     The river conditions forced all mooring operations to be highly regulated for the safety of all parties involved.

(Doc. 16-2).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movants and draws all reasonable inferences in their favor. *Coleman v. Houston Independent School District*, 113,

F.3d 528 (5th Cir. 1997).  After a proper motion for summary judgment is made, the non-movants must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986).  The non-movants' burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex Corp. V. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**Whether Defendants Are Shielded from Liability by an Act of God**

"[T]he burden of proving inevitable accident or Act of God rests heavily upon the [party] asserting such defense."  *James v. River Parishes Co., Inc.*, 686 F.2d 1129, 1132 (5th Cir. 1982), (quoting, *Petition of U.S.*, 425 F.2d 991, 995 (5th Cir. 1970)).  The party asserting the defense of Act of God "must show that the accident could not have been prevented by 'human skill and precaution and a proper display of nautical skills."  *Id.*  The Fifth Circuit has upheld a jury instruction that provides:

> An act of God may be defined in a comprehensive definition as any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pain or care, reasonably to have been expected, could have been prevented.  The act must be one occasioned exclusively by the violence of nature and all human agency is to be excluded from creating or

6

entering into the cause of the mischief resulting.  The term
implies the intervention of some cause not of human origin
and not controlled by human power.

*Travelers Ins. Co. v. Randall*, 264 F.2d 1 (5th Cir. 1959).

Plaintiffs argue that man-made revetment at Mile Marker 180 caused the
incident,[9] and the undisputed facts establish for purposes of this motion that the
NATALIE BOLTEN successfully anchored at Mile Marker 179 under virtually the
same high water conditions that existed during her unsuccessful attempt to anchor
at Mile Marker 180.  The court also notes that plaintiffs have set forth the deposition
of William E. Fitzpatrick in which he states that about two days after the incident, a
vessel of approximately the same size as the NATALIE BOLTEN successfully
anchored at Mile Marker 179 after unsuccessfully attempting to do so at Mile Marker
180 (Fitzpatrick Dep., pp. 32-36).

Viewing the facts in the light most favorable to the non-movants and drawing
all reasonable inferences in their favor, the court finds that an issue of fact exists as
to whether high water conditions were the exclusive cause of the incident.[10]
Because the Act of God defense requires defendants to establish that the accident
was due directly and exclusively to natural causes without human intervention, the

---

[9]According to Captain Paul Hidalgo, revetment consists of concrete mats
placed by the Army Corps of Engineers on the side of the river to prevent erosion
(Hidalgo Dep. p. 21).

[10]The court also notes that defendants have set forth no evidence to establish
that the incident could not have been prevented by reasonable measures.

court concludes that genuine issues of fact preclude summary judgment in favor of defendants grounded on the Act of God defense.

**The Doctrine of *Robins Dry Dock***

"It is unmistakable that the law of this circuit does not allow recover of purely economic claims absent injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006); see also, *State of Louisiana, ex rel. Guste v. M/V TESTBANK,* 752 F.2d 1019, 1024 (5th Cir. 1985) (stating that "[t]his circuit has consistently refused to allow recovery for economic loss absent physical damage to a proprietary interest") .  This rule, often called the doctrine of *Robins Dry Dock*, arose out of the holding of the Supreme Court in *Robins Dry Dock & Repair Co. v. Flint, et al*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed.290 (1927).

In *Robins,* employees of a dry dock negligently damaged a ship's propeller and the repairs required the ship to stay in dry dock for two weeks.  The plaintiffs did not own the damaged vessel but had chartered it from the owner and filed suit to recover revenue that was lost while the propeller was being repaired.  In holding that the defendants were not liable to the charterer, the Supreme Court stated that "[t]he injury to the propeller was no wrong to the respondents but only to those to whom it belonged."  *Robins,* 275 U.S. at 308.  The Court also stated that "a tort to the person or property of one man does not make the tort-feasor liable to another merely

8

because the injured person was under a contract with that other unknown to the doer of the wrong." *Id.* at 309.

The Fifth Circuit has repeatedly noted that the bright line rule of *Robins Dry Dock* serves as a "pragmatic restriction on the doctrine of foreseeability." *In re Taira Lynn Marine,* 444 F.3d at 377; See also, e.g., M/V *TESTBANK,* 752 F.2d at1023*; Corpus Christic Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198 (5th Cir 1995)*; IMTT-Gretna v. Robert E. Lee* SS, 993 F.2d 1193, 1194 (5th Cir. 1993). Defendants seek to have that doctrine applied in the present case and argue that, though plaintiffs may be owners of the *NATALIE BOLTEN*, they do not claim any physical injury to the vessel and are thus unable to recover their purely economic losses.

The bright line rule of *Robins Dry Dock*, however, does not limit a plaintiff's recovery to claims of physical injury to a proprietary interest. Instead, it restricts the doctrine of foreseeability by preventing recovery "of purely economic claims *absent* injury to a proprietary interest in a maritime negligence suit." *In re Taira Lynn Marine*, 444 F.3d at 377 (emphasis added). Thus, the bright line rule does not prohibit a plaintiff who has suffered physical damage to a proprietary interest from seeking recovery of purely economic damages. Therefore, the issue before the court is whether plaintiffs have set forth evidence from which a reasonable fact-finder could conclude that plaintiffs suffered physical damage to a proprietary interest.

Plaintiffs argue that debris fouled the anchors, tangling them in steel wire and concrete, thus damaging them such that the vessel was unable to anchor and had to stay underway until morning, when the damage could be repaired.  William Fitzpatrick stated in his deposition that cranes were brought in so that the cables could be cut and cement debris could be removed from the vessel's port and starboard anchors (Fitzpatrick Depo. pp. 28-29).  Torsten Kluever, operations manager for August Bolten, stated in his deposition that upon heaving the *NATALIE BOLTEN'*s anchors it was discovered that, "a lot of material, ropes, wires or something like this had been slung around the anchors, which had to be removed by welding" (Kluever Depo. pp. 10,16-17).

Defendants argue that they freed the anchors without charge and that after it was done, there was no damage to the *NATALIE BOLTEN* other than normal wear and tear.  Defendants argument, however, does not controvert the evidence set forth by plaintiffs to establish that they suffered physical damage to a proprietary interest.  The bright line rule of *Robins Dry Dock* does not address whether the physical damages were repaired at no cost by a defendant, but merely whether such damage was sustained.

Therefore, viewing the facts in the light most favorable to the non-movants and drawing all reasonable inferences in their favor, the court concludes that a genuine issue of fact precludes summary judgment in favor of defendants based upon the doctrine of *Robins Dry Dock*.

10

11

**CONCLUSION**

For the foregoing reasons, the motion by defendants, Cooper/T. Smith Stevedoring Co., Inc., and CGB Enterprises, Inc., for summary judgment (doc. 16), is hereby **DENIED**.

New Orleans, Louisiana, this 26th day of May, 2010.


                                        _____
                                        HELEN G. BERRIGAN
                                        UNITED STATES DISTRICT JUDGE

12